UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ROBERT LOWINGER and ISSEK FUCHS, derivatively on behalf of CATERPILLAR, INC., <br><br> Plaintiff, <br><br> v. <br><br> DOUGLAS R. OBERHELMAN, EDWARD J. RAPP, STEVEN H. WUNNING, and LUIS DELEON <br><br> Defendants <br><br> CATERPILLAR, INC., a Delaware Corporation, <br><br> Nominal Defendant. | Case No. 1:15-cv-01109-SLD-JEH |

## ORDER

Before the Court are Defendants' Motion to Dismiss, ECF No. 22, Defendants' Motion for Leave to File a Reply in Support of Motion to Dismiss, ECF No. 25, Plaintiffs' Motion for Leave to File Sur-Reply Brief Instanter, ECF No. 28, and Plaintiffs' Motion to Strike Brief and, Alternatively, for Leave to File Proposed Response to Defendants' Supplemental Filing, ECF No. 35.  For the following reasons, the motions are GRANTED.

## BACKGROUND[1]

---

[1] At the motion to dismiss stage of litigation, a district court must assume the truth of the complaint's well-pleaded factual allegations, though not its legal conclusions. *Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012).  Besides the complaint itself, a motion to dismiss may be based on "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the plaintiff's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).  Accordingly, the facts set forth below are stated as favorably to Plaintiffs as permitted by the amended complaint and the other materials just

1

Caterpillar (or "Company"), a publicly traded Delaware corporation with its principal executive offices located in Peoria, Illinois, is a manufacturer of construction and mining equipment, diesel and natural gas engines, industrial gas turbines, and diesel-electric locomotives.

The operative pleading in this case names Caterpillar as nominal defendant, in addition to four Individual Defendants: Douglas R. Oberhelman, Edward J. Rapp, Steven H. Wunning, and Luis de Leon.

**The Acquisition & Demand Futility Suits**

On November 10, 2011, Caterpillar issued a joint press release with ERA publicizing its pre-conditional voluntary offer for the purchase of Zhengzhou Siwei Mechanical & Electrical Manufacturing Co., Ltd. ("Siwei"), a manufacturer of hydraulic mining roof supports that was a wholly owned subsidiary of ERA Mining Machinery, Ltd ("ERA"), a Chinese mining equipment company.

In June 2012, Caterpillar completed the tender offer to acquire ERA and Siwei. In November 2012, Caterpillar announced that it had identified discrepancies between the inventory recorded in Siwei's accounting records and its actual physical inventory during an inventory check at Siwei's facilities, and was launching an internal investigation into Siwei. On January 18, 2013, Caterpillar issued a press release announcing that this internal investigation into Siwei had uncovered "deliberate, multi-year, coordinated accounting misconduct concealed at Siwei" designed to overstate the profitability of Siwei's business. Specifically, Caterpillar's internal investigation identified inappropriate accounting practices involving improper cost allocation

---

mentioned, with all reasonable inferences drawn in Plaintiffs' favor. *See Westmoreland Cnty. Emp. Ret. Sys. v. Parkinson*, 727 F.3d 719, 729 (7th Cir. 2012).

that resulted in overstated profit, as well as improper revenue recognition practices involving early and, at times, unsupported revenue recognition. As a result of this misconduct, Caterpillar reported a non-cash goodwill impairment charge of $580 million in the fourth quarter of 2012.

Oberhelman participated in a conference call on January 28, 2013, in which he stated "I recognize the decision to acquire Siwei happened on my watch and the buck stops at my desk. I am accountable for that acquisition." Between January and March 2013, several financial news outlets published pieces reporting that there were pre-acquisition "red flags" that the Caterpillar Board should have taken into consideration. The Caterpillar Board, during its investigation of the accounting practices at Siwei, characterized the situation as one in which it had been "deliberately misled" by Siwei managers.

On March 6, 2013, the first of four shareholder derivative suits alleging demand futility was filed in the Central District of Illinois. All four suits were consolidated by the Court on March 31, 2014. The Court dismissed the Consolidated Complaint on September 28, 2015. An Amended Consolidated Complaint was filed November 12, 2015, and again dismissed for failure to plead demand futility on September 29, 2016, on the basis that plaintiffs failed to raise a reasonable doubt that the Directors were disinterested and independent or that the challenged transaction was otherwise the product of a valid exercise of business judgment. In the meantime, the Court denied Defendants' motion to stay this case on March 28, 2016. ECF No. 21.

**The Demand Process**

On June 25, 2014, Plaintiffs sent a demand letter ("Demand") to the Caterpillar Board to demand an investigation into the Acquisition and specifically any potential claims of breach of fiduciary duty by Oberhelman, Wunning, Rapp, and de Leon.

After volleying information requests about Plaintiffs' shareholder status throughout July and August 2014, Sidley Austin sent a letter on Board's behalf, dated August 29, 2014, stating the Board's decision not to pursue the investigation while the other suits were pending in the Central District of Illinois. The letter stated that "because the Company is expending time and resources to defend against the Derivative Litigation plaintiffs' contention that demand on the Board is futile, the Board believes that it is appropriate first to litigate that contention before addressing the demands in your letter." August 29, 2014 Demand Response, Compl. Ex. F, ECF No. 3-8.

Plaintiffs' counsel responded on September 30, 2014, indicating that it disagreed with the Board's decision to delay investigation, and that it would consider the Board's failure to promptly investigate as an effective refusal of the Demand. Sept. 30, 2014 Pl.'s Letter Board's attorney, Compl. Ex. G, ECF No. 1-9. Plaintiffs expressed concerns that the Board's delay would lead to an inability to make claims within certain statutes of limitations. *Id.*

Around November 13, 2014, Plaintiffs' counsel held a teleconference with Caterpillar's counsel at Sidley Austin, during which Plaintiffs expressed concerns about the applicable statute of limitations. Defendants' counsel refused to enter into a tolling agreement and offered to provide legal analysis regarding the tolling of the statute of limitations, which they had not done by the time of the filing of the complaint, despite follow-up requests from Plaintiffs' counsel.

On March 17, 2015, Plaintiffs filed the present action alleging the individual Defendants breached their fiduciary duties to Caterpillar. In August 2015, Defendants filed a motion to stay the case, ECF No. 21, which was denied on March 28, 2016. The Motion to Dismiss was filed on June 15, 2016.

## DISCUSSION

Defendants argue that their consideration of Plaintiffs' demand was not refused, but only subject to "deferred consideration" due to the pending Consolidated Litigation. Mot. Dismiss 2. Further, Defendants argue, Plaintiffs have not presented particularized facts showing that the decision to delay or refuse the demand was wrongful. Mem. Supp. Mot. Dismiss 13. Plaintiffs assert that the Board's response was not timely because the Board's inaction threatened to run up against the three-year statute of limitations within which a suit for breach of fiduciary duty may be brought under Delaware law. Opp. Mot. Dismiss 5. Plaintiffs also argue that the Court may not consider the materials submitted by Defendants subsequent to the filing of the complaint to show that it acted in accordance with the business judgment rule. *Id.* at 12–13. Defendants move to dismiss the complaint as prematurely filed. Mem. Supp. Mot. Dismiss 10, ECF No. 23. Plaintiffs argue that they did not file prematurely, because the Board's delay in investigating, in addition to its refusal to enter into tolling agreements, threatened to result in making the suit untimely. Mem. Opp. 5. Plaintiffs made the Demand in June 2014 and filed suit in March 2015.

**I.      Legal Standard on a Refused or Delayed Demand in Shareholder Derivative Suit**

The derivative suit is a tool by which a shareholder seeks to enforce the corporation's right against its own directors' "misfeasance and malfeasance." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991). Because "'the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders,' most jurisdictions require a pre-suit demand be made of the corporation's board of directors." *In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795, 803 (7th Cir. 2003) (quoting *Kamen*, 500 U.S. at 101). Under Delaware law, which the parties agree applies here, a shareholder may only bring suit (1) where the shareholder "has demanded that the directors pursue the corporate claim and they have wrongfully refused to

5

do so" or (2) "where demand is excused because the directors are incapable of making an impartial decision regarding such litigation." *In re Discover Fin. Servs. Derivative Litig.*, No. 12 C 6436, 2015 WL 1399282, at *3 (N.D. Ill. Mar. 23, 2015) (quoting *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993)).

When shareholders make a demand upon the board of directors, the shareholders "tacitly concede[] the independence of a majority of the board to respond." *Levine v. Smith*, 591 A.2d 194, 212 (Del. 1991) *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Upon receipt of the demand, a board "must investigate" the alleged wrongdoing and decide on a course of action. *Maccoumber v. Austin*, No. 03 C 9405, 2004 WL 1745751, at *3 (N.D. Ill. Aug. 2, 2004). Because Delaware law strongly presumes that directors are the managers of corporate affairs, shareholder plaintiffs must also ensure that, before initiating their own suit, they "have afforded the board sufficient time to investigate the allegations and decide whether to bring suit or reject the demand." *Piven v. Ryan*, No. 05 CV 4619, 2006 WL 756043, at *2 (N.D. Ill. Mar. 23, 2006). "There can be no precise rule as to how much time a Board must be given to respond to a demand. Indeed, the question in premature filing cases is . . . whether the time between demand and filing of suit was sufficient to permit the Board of Directors to discharge its duty to consider the demand." *Allison on Behalf of Gen. Motors Corp. v. Gen. Motors Corp.*, 604 F. Supp. 1106, 1117 (D. Del. 1985). A reasonable response time hinges on the "complexity of the technological, quantitative, and legal issues raised by the demand." *Maccoumber*, 2004 WL 1745751, at *4 (quoting *Allison*, 604 F. Supp. at, 1117–18).

A board's failure to issue a formal response to the demand may constitute an implicit refusal. *See e.g.*, *Ironworkers Dist. Council of Philadelphia & Vicinity Ret. & Pension Plan v. Andreotti*, No. CV 9714-VCG, 2015 WL 2270673, at *23 (Del. Ch. May 8, 2015), *aff'd sub nom.*

*Ironworkers Dist. Council of Philadelphia v. Andreotti*, 132 A.3d 748 (Del. 2016). Once a board has taken some action in response—but has not made a formal decision—and plaintiffs proceed to file suit, the suit may proceed if the plaintiff raises "a reasonable doubt that the board's lack of response is consistent with its fiduciary duties." *Rich ex. rel. Fuqi Intern., Inc. v. Yu Kwai Chong*, 66 A.3d 963, 976–77 (Del. Ch. 2013). "Where the board considers a demand, and determines that pursuit of the litigation demanded is not in the corporate interest, the stockholder thereafter lacks standing to bring the litigation derivatively, unless the board's refusal is wrongful[.]" *Ironworkers Dist. Council of Philadelphia & Vicinity Ret. & Pension Plan v. Andreotti*, No. CV 9714-VCG, 2015 WL 2270673, at *25 (Del. Ch. May 8, 2015).

When shareholders file suit, they must state with particularity "any effort by the plaintiff to obtain the desired action from the directors or comparable authority," Fed. R. Civ. P. 23.1(b)(3)(A), and that the board's refusal of its demand "itself is in breach of the directors' fiduciary duties," *Ironworker Dist. Council*, 2015 WL 2270673, *25.

> Where a plaintiff has pled particularized facts which, taken as true, create a reasonable doubt that the board's investigation complied with its duty of loyalty—that is, was undertaken in good faith—or with its duty of care—that is, was not grossly negligent—he has rebutted the business judgment rule with respect to the board's refusal of his demand, and may proceed with the litigation; otherwise, under Rule 23.1, the derivative litigation must be dismissed.

*Id*. A court may reasonably infer a breach of the duty of care when a board issues a decision without sufficient information due to a failure "either to investigate the demand at all or in pursuing such an inadequate investigation, in light of the seriousness of the demand." *Id*. at 26. A shareholder can allege bad faith by pleading facts showing a board decision was "so inexplicable that a court may reasonably infer that the directors must have been acting for a purpose unaligned with the best interest of the corporation." *Id*.

  **B. Constructive Refusal or Deferred Consideration**

Plaintiffs assert the Board's decision amounts to a tacit refusal of the demand that is outside the protection of the business judgment rule. Opp. Mot. Dismiss 5–9. Defendants argue the Board's decision was a deferral, not a rejection, and the complaint should be dismissed as premature. Mem. Supp. Mot. Dismiss 9–13. The Court must decide whether the complaint alleges the Board's actions constitute a constructive refusal of Plaintiff's demand or a decision to defer consideration of the demand until after the parallel consolidated demand futility case was resolved.[2] The Court must then decide whether the Board's decision is protected by the business judgment rule. If it is not protected by the business judgment rule, the suit proceeds. If it is protected by the business judgment rule, the suit should be dismissed.

Defendants ask the Court to follow the lead of *MacCoumber* and *Piven v. Ryan*, No. 05–cv–4619, 2006 WL 756043, at *3–4 (N.D. Ill. Mar. 23, 2006). In *MacCoumber,* a shareholder demanded an investigation into behavior prompting a $600 million fine. The Board deferred consideration of the demand until a later time because it was busy spending time and money on previously filed demand-futile derivative suits making the same claims. *MacCoumber*, 2004 WL 1745751, *2. The shareholder waited about a month and then filed suit alleging wrongful refusal of demand. The district court decided that the board's promise, to investigate promptly once the futility issue was decided, was reasonable given that the resolution of that case would eliminate or trigger the board's investigation. The court dismissed the derivative suit, with leave to refile, pending the state court's determination of the demand futility issue in an earlier-filed derivative action. *MacCoumber*, 2004 WL 1745751, at *5–6. The facts and outcome of *Piven v. Ryan*, 2006 WL 756043, at *3–4 are similar.

---

[2] Defendant asserts the fact that the demand was only deferred and not rejected justifies dismissal without consideration of whether it was a decision protected by the business judgment rule. Mem. Supp. Mot. Dismiss 13. *MacCoumber* and *Piven* did not explicitly reference the rule in regard to the decision to defer, but both courts pronounced the decisions reasonable before dismissing the suits. *MacCoumber*, 2004 WL 1745751, *6; *Piven*, 2006 WL 7456043, *4.

8

In contrast, Defendants offer *Rich ex rel. Fuqi Intern., Inc. v. Yu Kwai Chong*, 66 A.3d 963, 976 (De. Ch. 2013). In *Rich*, stockholders made a demand in June 2012. *Id.* at 969. In October 2010, the board created a committee to investigate the demand's allegations. A separate audit committee eventually began investigating accounting problems. By January 2012, the Board had quit paying the audit committees' analysts. The committee never finished its audit and the board never responded to the demand in writing. *Id.* at 969, 972. The court concluded that the board abandoned its investigation despite being aware of some corporate mismanagement. Under those circumstances, the court found the allegations sufficient to raise a reasonable doubt that the board acted in good faith and refused to apply the protections of the business judgment rule. *Id.* at 979. "[W]here the board has not responded to a demand, the plaintiff satisfies [23.1], and may proceed, upon raising a reasonable doubt that the board's lack of a response is consistent with its fiduciary duties." *Id.* at 976.

Here, the Board responded to the June 25, 2014 demand on August 29, 2014, advising the Plaintiffs that the Derivative Litigation had previously been filed and that its resolution would directly affect the Board's response to the Plaintiffs' demand, the Board intended to conserve resources by waiting until after the Derivative Litigation was resolved before investigating Plaintiffs' allegations. August 29, 2014 Demand Response. The Board's decision here looks very similar to the boards' decisions in both *MacCoumber* and *Piven*—deferring rather than tacitly refusing, like the Board in *Rich*. The Court finds the Board acted—it did not ignore Plaintiffs' Demand. Its Response, which was drafted after ascertaining that the Plaintiffs were indeed shareholders, indicated that it had reviewed the Demand, and alerted Plaintiffs to the already commenced litigation raising the same claims but in a demand excused posture. It relays a decision to defer further inquiry into the Demand's allegations because since "the Derivative

9

Litigation will necessarily address the issue of whether a demand is required, the Board has determined that it would not be a prudent expenditure of time and resources for it to conduct additional inquiry into the allegations raised in your letter." Demand Response. It supports its decision by referring to *MacCoumber* and *Piven*. It indicates future activity because it promises to "monitor the progress of the Derivative Litigation and . . . consider your letter at a later point in time, as circumstances warrant." *Id*. at 2. The Court finds the Board's letter was a deferral, not a rejection, of Plaintiffs' Demand.

### C. Business Judgment Rule

The Court must then assess whether the Board's decision to defer is protected by the business judgment rule. Defendants assert its decision was protected because the Complaint does not include any facts from which the Court could infer the Board's decision was made in bad faith or that the Board was uninformed when it issued its Demand Response. Mem. Supp. Mot. Dismiss 14. Plaintiffs' only basis for arguing the Board's decision was not protected by the business judgment rule is Plaintiffs' allegations that the Board did not act in good faith when it delayed considering the Demand and "potentially compromised any claims to the extent that they would need to be asserted within the applicable limitations period." Compl. ¶ 67. Defendants additionally refused to enter a statute of limitations tolling agreement. *Id*. ¶ 68.

Plaintiffs claim the breach of fiduciary duty claim is subject to Delaware's three-year statute of limitations period for breach of fiduciary duty claims. *See, e.g.*, *Ausikaitis v. Kiani*, 962 F. Supp. 2d 661, 673 (D. Del. 2013) ("[P]ursuant to 10 Del. C. § 8106, claims for breach of fiduciary duty . . . are subject to a three-year statute of limitations."). The Acquisition was completed on June 6, 2012, Compl. ¶¶ 1 and 36, which Plaintiffs allege makes June 6, 2015 the

potential and likely deadline for filing any claim. Opp. Mot. Dismiss 5, 8–9. The complaint was filed on March 17, 2015.

To support their claim that Defendants' deferred response constitutes bad faith, Plaintiffs cite *Witchko v. Schorsch*, No. 15 CIV. 6043 (AKH), 2016 WL 3887289, at *4 (S.D.N.Y. June 9, 2016). In *Witchko,* the court denied the defendant's motion to dismiss for lack of derivative standing and found the demand refusal, which, in part, proposed postponing suit, lacked evidence of independent and good faith consideration of the merits. The court questioned the continued viability of postponing suit because at oral argument the attorneys seemed unaware of when the statute of limitations would run. The court expressed concern that while the board's decision to wait "to bring the claims might be a sound business judgment, a failure to enter into some sort of stipulation to extend the time frame for such a claim during the pendency of the related litigation and government investigation, could be an abdication of that judgment." *Id*. at *4 & n.1. The statute of limitations was set to run within 6 months of oral argument. *Id*.

Defendants dispute Delaware's three-year statute of limitations applies here. Under Illinois choice-of-law rules, *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941), Plaintiffs' derivate claim for breach of fiduciary duty is governed by Delaware substantive law and Illinois procedural law. Reply 1–2, ECF No. 26 (citing *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 383 (7th Cir. 1990)). Statute of limitations are procedural, *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc*., 770 N.E.2d 177, 194 (Ill. 2002), and the Illinois statute of limitations for breach of fiduciary duty is five years. 735 ILCS 5/13-205; *Travelers Cas. & Sur. Co. v. Bowman*, 893 N.E.2d 583, 587 (Ill. 2008). Defendants properly distinguish Plaintiffs' cases; in *Ausikaitis,* the parties agreed the Delaware statute of limitations applied, and in *Niki*, the parties' contractual choice of Delaware law was not contested.

The Court agrees with Defendants' assessment of the proper statute of limitations in this case, but is not required to so rule because no one argues Plaintiffs missed the deadline. Instead, Plaintiffs argue that knowing the three-year statute of limitations applied, the Board's decision to defer investigating the demand until after the Court decided whether demand was required was too risky, placed recovery in jeopardy, and could only have been made in bad faith. Similarly indefensible was its decision to not enter into a tolling agreement. However, Plaintiffs have not alleged the Board shared its understanding that a three-year statute of limitations applied in this case. Therefore, no inference of bad faith can be drawn from Plaintiffs' vague allegations that the Board's decision to defer and not enter into tolling agreements was in bad faith. Defendants have professed here that the deadline for filing was actually five years from the date Caterpillar became aware of certain discrepancies in inventory—November 2017. Reply 1. Caterpillar's response to Plaintiffs' Demand was conveyed by letter on August 29, 2014, 38 months before the proposed deadline. The Board's decision to defer its investigation to await a ruling in the demand futility case does not indicate bad faith.

## CONCLUSION

The Board's decision to defer its investigation is protected by the business judgment rule and Plaintiffs' complaint is therefore premature. Defendants' Motion to Dismiss, ECF No. 22, is GRANTED. Plaintiffs' Complaint is DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO REFILE. If Plaintiffs choose to file an amended complaint, they are directed to do so by April 28, 2017. Defendants' Motion for Leave to File a Reply in Support of the Motion to Dismiss, ECF No. 25, is GRANTED. Plaintiff's Motion for Leave to File a Sur-Reply, ECF No. 28, is GRANTED. Plaintiffs' Motion to Strike Defendants' Supplemental Brief, ECF No. 35, is GRANTED.

Entered March 31, 2017.

s/ Sara Darrow<br>SARA DARROW<br>UNITED STATES DISTRICT JUDGE